UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN GARCIA, | Case No. 1:20-cv-01167-CDB |
| Plaintiff, | OPINION AND ORDER AFFIRMING THE COMMISSIONER [2] |
| v. | (ECF Nos. 26-27) |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

Adrian Garcia (Plaintiff) seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Social Security Disability Insurance and Supplemental Income benefits for lack of disability. (ECF No. 1). The matter is before the Court on the Plaintiff's motion for summary judgment, which is submitted on the parties' briefs without need for oral argument. (ECF Nos. 26, 27). For the reasons set forth herein, the Court affirms the Commissioner's decision.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (ECF. No. 11).

# I. JURISDICTION

On August 30, 2017, Plaintiff protectively filed a Title II application for Social Security Disability Insurance (SSDI) Benefits and title XVI application for Supplemental Security Income (SSI) alleging disability beginning August 1, 2015. (AR 15, 151-165). Plaintiff alleged a severe impairment due to paranoid schizophrenia. (AR 246). The claims were denied on November 1, 2017 (AR 98-102) and upon reconsideration on January 23, 2018. (AR 111-124). Plaintiff requested a hearing before an Administrative Law judge (ALJ) on January 25, 2018. (AR 125-130). Plaintiff appeared and testified at a hearing on October 21, 2019. (AR 30-47). Then, on November 22, 2019, the ALJ issued decision against Plaintiff. (AR 25). On December 12, 2019, the Appeals Council notified Plaintiff that it has received his request for review of the ALJ's action. (AR 7). On June 15, 2020, the Appeals Council denied Plaintiff's request for review. (AR 1). On August 17, 2020, Plaintiff filed the present action against the Commissioner of Social Security invoking jurisdiction under 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

# II. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is

harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### III.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as

severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## IV.   ALJ'S FINDINGS

The ALJ found that Plaintiff met the insured status requirements (DLI) through September 30, 2017. (AR 17). At Step One, the ALJ found that Plaintiff had not engaged in substantial

4

gainful activity (SGA) since the alleged onset date (AOD), of August 1, 2015. (AR 17). At Step Two, the ALJ found that Plaintiff had the following severe impairments: schizophrenia, psychotic disorder, stimulant-related mood disorder, cannabis dependence, and amphetamine abuse. (AR 17). At Step Three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments." *Id.* The ALJ further determined that Plaintiff had the Residual Functional Capacity (RFC):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine tasks; the claimant can have rare or no (10 % of the time or less) work interactions with the public; and the claimant can have occasional work interactions with coworkers and supervisors.

(AR 19). At Step Four, the ALJ determined that Plaintiff was unable to perform past relevant work (PRW). (AR 23-24). At step Five, per vocational expert (VE) testimony, the ALJ found that Plaintiff could perform other work existing in the national economy like dishwasher, prep cook, and cleaner. Also at Step Five of the sequential evaluation, the ALJ made a finding of "non-disability". (AR 28).

## V. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his application for SSDI and SSI. (ECF No. 1). Plaintiff raises the following issues for this Court's review: (1) Whether the ALJ failed to provide "clear and convincing" reasons for rejecting the severity of symptomology evidence, including whether this purported failure was harmful; and (2) whether the ALJ committed harmful error in rejecting the four treating source opinions of psychological disability. (ECF No. 26 at 5).

## VI. DISCUSSION

### A. ALJ's Rejection of Plaintiff's Symptomology Severity Evidence

Plaintiff contends that the ALJ committed harmful error by failing to provide "clear and convincing" reasons to reject the evidence of record supporting symptomology evidence. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-35 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). If a claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the Plaintiff's testimony of his symptoms only by "offering specific, clear and convincing reasons for doing so." *Id.* (citations omitted).

"The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). Under the clear and convincing evidence standard, "[g]eneral findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

Here, the ALJ found that Plaintiff's medically determinable impairments could "reasonably be expected to cause some of the alleged symptoms", however the ALJ also found that Plaintiff's statements concerning the persistence and limiting effects of his symptoms are not consistent with the medical evidence and other evidence on the record. (AR 24). Given that the ALJ found that Plaintiff did have an impairment which could reasonably be expected to cause some of his symptoms, the ALJ's finding against Plaintiff's statements of intensity, persistence and limiting effects related to his symptoms should be scrutinized under a "clear and convincing" reasons standard.

Plaintiff contends that the ALJ's rejection of his psychological symptomology constituted harmful error. He claims that the ALJ's analysis is lacking as it did not discuss the positive mental status exams (MSE) which he believes support a finding of a disabling psychiatric symptomology. (AR 281, 282, 449) Plaintiff believes that his anxiety, depressed mood, audiovisual hallucinations (AVH) were consistently documented on the record and that the ALJ failed to discuss the significance of AVH symptomology on the record. (ECF No. 26 p.22).

Additionally, while Plaintiff concedes that a drug and alcohol analysis[3] was not originally at issue in this case, he claims the ALJ created the need to undertake the analysis by discussing his underlying substance abuse disorders in her decision. *Id.* (*citing Robinson v. Saul*, 2021 WL 1108582, *5-7 (D. Hawaii Mar. 23, 2021)).

The ALJ did not create a need for a drug and alcohol analysis so *Robinson* is neither binding nor persuasive here. Rather, the ALJ's analysis of Plaintiff's testimony related to illegal substance abuse is probative as to the inconsistent accounts of his drug use as compared to contemporaneous medical records. (AR 20). An ALJ may consider a claimant's reputation for truthfulness, inconsistencies in their testimony, their daily activities, work record, and testimony from physicians and third parties concerning the severity and effect of the symptoms that the claimant complains of. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002). The ALJ's discussion of Plaintiff's illegal substance abuse had the purpose to illustrate inconsistencies in his testimony and not to weigh whether the drug use had a material effect in his impairment.

Furthermore, contrary to Plaintiff's assertions, the ALJ's finding is not confined to inconsistencies related to Plaintiff's drug use. The ALJ's finding relied on Plaintiff's medical records where his providers repeatedly noted that although he frequently experienced AVH symptoms consistent with paranoid schizophrenia, he also consistently exhibited various positive signs such as alertness, average intelligence, fair memory, organized thoughts, and normal mood. (AR 20). The treating providers made these determinations even though they noted that Plaintiff had active amphetamine and cannabis dependence issues throughout the relevant time-period. (See AR 257-284). Indeed, the ALJ noted that on August 7, 2019, two-and-a-half months prior to Plaintiff's hearing before her, he was discharged by his psychiatric providers who explained that "Medical Necessity criteria are no longer met"; "[Plaintiff] does not require specialty mental health services for maintaining adequate functioning"; and "[Plaintiff] has derived maximum

---

[3] If a claimant is found disabled in claims where drug or alcohol abuse is implicated, then the adjudicator must "determine[e] which of the claimant's disabling impairments would remain if the claimant stopped using drugs or alcohol." *Parra v. Astrue*, 481 F3d 742, 747 (9th Cir. 2007). When a claimant's drug or alcohol use is not material for a disability analysis, then any error in not engaging in the analysis is harmless. *Id.*

benefit from mental health care[.]" (AR 21).

Based on this evidence and upon review of the record as a whole, the ALJ's rejection of Plaintiff's symptom claims, even when accounting for the underlying substance abuse, and persistent AVH symptoms, is supported by clear and convincing evidence.

**B. ALJ's Rejection of Plaintiff's Treating Sources**

Plaintiff next asserts that the ALJ failed to provide substantial evidence to reject the treating source opinions, and instead, "cherry picked" findings from the treating sources. Plaintiff argues that the ALJ's rejection of the treating sources mischaracterize their examinations and determinations as supporting a greater level of functional capacity, which is contrary to their testimony. The Court of Appeals recently provided guidance in regard to court review of medical opinions, it states:

> "The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c).

*Woods v. Kijakazi*, 32 F.4th 785, 791-792 (9th Cir. 2022). An ALJ cannot reject a doctor's opinion without providing an explanation supported by substantial evidence. *Id.* The ALJ must explain how persuasive it finds all the medical opinions from each doctor or source. *Id.* The ALJ must explain how it considered the supportability and consistency factors when reaching their findings. *Id.*; §404.1520c(b)(2).

First, Plaintiff asserts that the ALJ's rejection of Dr. Toni Pusateri's completed Mental Residual Functional Capacity Questionnaires was in error. In a check-off report, Dr. Pusateri indicated that Plaintiff experienced the highest level of limitation possible, which is that Plaintiff's performance is precluded for 15% or more of an eight-hour workday for nearly all categories of the Mental Residual Functional Capacity Questionnaire. (AR 23, 382, 390). But Dr. Pusateri's first report, completed in December 2017, provided no explanation whatsoever supporting her conclusions. (AR 381-83). And Dr. Pusateri's second filled Questionnaire,

1  completed January 25, 2019, contained general explanations, no longer than a sentence, about the
2  effects of psychosis. (AR 390-392).

3        The ALJ found that "[t]hese extreme conclusions are unsupported by any but the most
4  general references to the claimant's difficulties with processing, concentration, paranoia, etc . . ."
5  (AR 23).  An ALJ may reject check-off reports that do not contain explanation of the bases of
6  their conclusions.  *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citing *Molina v. Astrue*,
7  674 F.3d 1104, 1111 (9th Cir. 2012) (superseded on other grounds by 20 C.F.R. § 416.920(a)).
8  "The ALJ need not accept the opinion of any physician, including a treating physician, if that
9  opinion is brief, conclusory, and inadequately supported by clinical findings."  *Thomas*, 278 F.3d
10 948 at 957 (citation omitted).  This Court agrees with the ALJ that Dr. Pusateri's lack of support
11 for her conclusions cuts against her supportability.

12       The ALJ further found that Dr. Pusateri's conclusions were unsupported by her own
13 treatment records, as well as records from her employer, Turning Point of Central California
14 (Turning Point), which noted that Plaintiff no longer required mental health services, behaved
15 within cultural norms, and marked functionality despite his ongoing symptoms. (AR 20-21, 258,
16 263-64,284-85,297-98, 374-75, 377-78, 415-16, 421-22, 465-66).  The ALJ's analysis outlined a
17 contradiction between Dr. Pusateri's filled Questionnaires and Plaintiff's medical records, which
18 cut against her credibility as related to both supportability and consistency.  Accordingly, The
19 ALJ's finding against Dr. Pusateri's opinion is supported by substantial evidence.

20       Second, Plaintiff challenges the ALJ's rejection of a Mental Disorder Questionnaire,
21 completed by counselor Olivia Zavala, and signed by Dr. Robert T. Ensom, the other treating
22 providers at issue here.  Counselor Zavala completed a Mental Disorder Questionnaire for the
23 Evaluation of Ability to Work on November 11, 2015. (AR 522 - 23).  This Questionnaire was
24 signed by Dr. Ensom.  Like Dr. Pusateri, Counselor Zavala and Dr. Ensom both treated Plaintiff
25 at Turning Point.  (AR 252-300, 369-80, 414-467).  Counselor Zavala noted in the questionnaire
26 that Plaintiff has a significant impairment in his concentration.  (AR 521).  Counselor Zavala
27 noted that Plaintiff had significant impairments related to hallucinations, delusional or paranoid
28 thoughts, mood swings, and social isolation. (AR 522-523).  Ultimately, Counselor Zavala

opined that Plaintiff's illnesses would affect his ability to work and would also impair his ability to adapt to stresses common in a work environment. (AR 523). As with Dr. Pusateri, the ALJ properly found that Counselor Zavala's filled questionnaire lacks supportability and consistency due to its contradictions with Dr. Ensom's and Turning Point's medical records. (AR 23, AR 258, 263-64, 284-85, 297-98, 374-75, 377-78, 421-22, 465-66).

The ALJ's consideration of Counselor Zavala and Drs. Pusateri and Ensom covered the supportability and consistency factors mandated by § 404.1520c(c). Plaintiff points to the consistency between the rejected opinions as evidence for their credibility, but that comparison is not persuasive.  As the ALJ noted, all the treating providers shared one common thread of inconsistency, which is that their statements were not supported by their own medical records. (AR 23). If all those opinions share the same fundamental root flaw, then their grouping would amount to little more than an equally flawed consensus. The lack of supportability is the main flaw in each opinion, and the fact that the same issue happens consistently among the treating providers does not add, but rather detracts from their credibility. The ALJ committed no error and provided substantial evidence to reject the treating source opinions.

## VII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly considered the medical opinion evidence and committed no error.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. The decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above; and
2. Plaintiff's Motion for Summary Judgment is DENIED; and

/ / /

3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

IT IS SO ORDERED.

Dated: **December 1, 2022**

UNITED STATES MAGISTRATE JUDGE